TED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| BROOKS INSTRUMENT, LLC, and | ) | |
| BI PRODUCTS, LLC, | ) | |
| | ) | Civil Action No. 1:10-cv-10720 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MKS INSTRUMENTS, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | Leave to file granted on June 10, 2010 |

**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, VIOLATION OF M.G.L. CH. 93 § 42, COMMON LAW MISAPPROPRIATION OF TRADE SECRETS, VIOLATION OF M.G.L. CH. 93A § 11, COMMON LAW UNFAIR COMPETITION, AS WELL AS DECLARATORY JUDGMENT FOR NON-INFRINGEMENT, INVALIDITY, AND UNENFORCEABILITY OF PATENTS**

Plaintiffs, Brooks Instrument, LLC and BI Products, LLC (collectively, "Plaintiffs"), by and through their attorneys, bring this action against defendant MKS Instruments, Inc. and request a jury trial on all issues so triable.  Plaintiffs allege as follows:

**THE PATENT INFRINGEMENT AND STATE LAW CLAIMS**

**THE PARTIES**

1.     Brooks Instrument, LLC ("Brooks") is a Delaware limited liability company with its principal place of business at 407 W. Vine Street, Hatfield, PA 19440-3000.

2.     BI Products, LLC ("BI Products") is a Delaware limited liability company with its principal place of business at 407 W. Vine Street, Hatfield, PA 19440-3000.

3.     On information and belief, Defendant MKS Instruments, Inc. ("MKS" or

"Defendant") is a Massachusetts corporation having its principal place of business at 2 Tech

Drive, Andover, Massachusetts 01810.

## JURISDICTION AND VENUE

4.     The patent infringement action arises under the patent laws of the United

States, 35 U.S.C. §§ 1 *et seq*.  The declaratory judgment action arise under the patent laws of

the United States, Title 35, United States Code, and the Declaratory Judgment Act, 28 U.S.C.

§§ 2201 *et seq*.  The pendant state law claims arise under the laws of the State of

Massachusetts.

5.     This Court has subject matter jurisdiction over the patent infringement and

declaratory relief claims alleged in Counts I, II, IX, X, and XI pursuant to 28 U.S.C. §§ 1331 and

1338(a).  This Court has subject matter jurisdiction over the pendant state law claims alleged in

Counts III through VIII pursuant to 28 U.S.C. § 1367(a) because those claims are so related to

the patent infringement claims and declaratory relief claims that they form part of the same

claim or controversy under the meaning of Article III of the U.S. Constitution.  The pendant

state law claims neither raise a novel or complex issue of state law nor substantially

predominate over the patent infringement and declaratory relief claims.  There are no other

compelling reasons for the court to decline jurisdiction over the state law claims.  The claims

are properly joined under the Federal Rules of Civil Procedure.

6.     This Court also has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest

and costs, and is between citizens of different states.

7.     This Court has personal jurisdiction over MKS because MKS maintains its

headquarters and principal place of business within this judicial district.  Accordingly, MKS

is doing business in this judicial district and has sufficient contacts with this state and judicial district to subject it to personal jurisdiction in this district.

8.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b).

## PATENT CLAIMS -- GENERAL ALLEGATIONS

9.       On July 11, 2006, United States Patent No. 7,073,392 (the "'392 patent"), entitled "Methods and Apparatus for Pressure Compensation in a Mass Flow Controller" duly and legally issued naming John Michael Lull, Chiun Wang, and Joseph A. Saggio, Jr. as inventors.  Brooks is the sole owner of all rights granted in the '392 patent.  A true and correct copy of the '392 patent is attached to this Complaint as Exhibit A and incorporated by reference.

10.      On October 14, 2008, United States Patent No. 7,434,477 (the "'477 patent") entitled "Methods and Apparatus for Pressure Compensation in a Mass Flow Controller" duly and legally issued naming John Michael Lull, Chiun Wang, and Joseph A. Saggio, Jr. as inventors.  Brooks is the sole owner of all rights granted in the '477 patent.  A true and correct copy of the '477 patent is attached to this Complaint as Exhibit B and incorporated by reference.

## COUNT I: INFRINGEMENT OF THE '392 PATENT

11.      Plaintiffs incorporate and reallege the allegations of paragraphs 1 through 10 as if fully set forth herein.

12.      Defendant has been and is infringing, inducing infringement and/or contributing to the infringement of the '392 patent in this District, and throughout the United States, by making, selling, using, offering for sale, and/or importing infringing flow delivery products, including at least, without limitation, MKS's "piMFC" series of pressure insensitive

mass flow controllers and mass flow meters, embodying the patented invention as claimed in one or more claims of the '392 patent and the Defendant will continue to infringe unless enjoined by this Court.  Upon information and belief, Defendant has sold these flow delivery products especially designed to be used by its customers, which include, without limitation, Veeco Instruments, Inc., Axcelis Technologies, Inc., and Novellus Systems, Inc., in such a way that infringes the '392 patent, which lack substantial non-infringing uses, and which customers have used to actually infringe the '392 patent.  Upon information and belief, Defendant has also sold these flow delivery products to its customers, which include, without limitation, Veeco Instrucments, Inc., Axcelis Technologies, Inc., and Novellus Systems, Inc., and, despite its knowledge of the '392 patent, has specifically intended that its customers infringe the '392 patent by providing at least marketing materials and instruction manuals detailing how to use these flow delivery products in such a way that infringes the '392 patent, and Defendant's customers have utilized Defendant's flow delivery products to actually infringe the '392 patent.

13.     Defendant committed these acts of infringement without license or authorization.

14.     Upon information and belief, to the extent any marking was required by 35 U.S.C. § 287, all predecessors in interest to the '392 patent complied with such requirements.

15.     Defendant had actual notice of the '392 patent prior to this lawsuit, but has continued to willfully and deliberately infringe despite such notice.

16.     As a result of Defendant's willful infringement of the '392 patent, Brooks has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.

17.     Brooks has suffered and will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendant, its agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '392 patent.

## COUNT II: INFRINGEMENT OF THE '477 PATENT

18.     Plaintiffs incorporate and reallege the allegations of paragraphs 1 through 17 as if fully set forth herein.

19.     Defendant has been and is infringing, inducing infringement and/or contributing to the infringement of the '477 patent in this District, and throughout the United States, by making, selling, using, offering for sale, and/or importing infringing flow delivery products, including at least, without limitation, MKS's "piMFC" series of pressure insensitive mass flow controllers and mass flow meters, embodying the patented invention as claimed in one or more claims of the '477 patent and the Defendant will continue to infringe unless enjoined by this Court.  Upon information and belief, Defendant has sold these flow delivery products especially designed to be used by its customers, which include, without limitation, Veeco Instruments, Inc., Axcelis Technologies, Inc., and Novellus Systems, Inc., in such a way that infringes the '477 patent, which lack substantial non-infringing uses, and which customers have used to actually infringe the '477 patent.  Upon information and belief, Defendant has also sold these flow delivery products to its customers, which include, without limitation, Veeco Instruments, Inc., Axcelis Technologies, Inc., and Novellus Systems, Inc., and, despite its knowledge of the '477 patent, has specifically intended that its customers infringe the '477 patent by providing at least marketing materials and instruction manuals detailing how to use these flow delivery products in such a way that infringes the '477 patent,

and Defendant's customers have utilized Defendant's flow delivery products to actually infringe the '477 patent.

20.     Defendant committed these acts of infringement without license or authorization.

21.     Upon information and belief, to the extent any marking was required by 35 U.S.C. § 287, all predecessors in interest to the '477 patent complied with such requirements.

22.     Defendant had actual notice of the '477 patent prior to this lawsuit, but has continued to willfully and deliberately infringe despite such notice.

23.     As a result of Defendant's willful infringement of the '477 patent, Brooks has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.

24.     Brooks has suffered and will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendant, its agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '477 patent.

### STATE LAW CLAIMS -- ADDITIONAL GENERAL ALLEGATIONS

25.     Plaintiffs incorporate and reallege the allegations of paragraphs 1 through 24 as if fully set forth herein.

26.     Celerity, Inc. ("Celerity") was an entity based in Austin, Texas and engaged in the manufacture and sale of mass flow controllers and other equipment used in semiconductor processing applications.

27.     On or about August 5, 2005, Celerity and MKS entered into a Confidential Information Agreement ("NDA") for, upon information and belief, the purpose of MKS investigating Celerity's technology and business pursuant to a potential acquisition of

Celerity by MKS.  A copy of the NDA is attached as Exhibit C to this Complaint and

incorporated by reference.

28.     Under the NDA, MKS expressly agreed to:

> (1) maintain the Confidential Information in strict confidence
> and not to disclose the Confidential Information to any third
> party; (2) to protect the Confidential Information with at least
> the degree of care with which it protects its own Confidential
> Information, but in no case with less than a reasonable degree
> of care; and (3) not to use the Confidential Information of
> Discloser [Celerity] for any purpose other than to transact
> business with Discloser [Celerity].

29.     Upon information and belief, on at least October 26, 2005 and November 7,

2005, Celerity, relying on the NDA and the promises of MKS evidenced thereby, disclosed

confidential information to MKS about at least the configuration, performance, and

advantages of Celerity's Pressure Transient Insensitive ("PTI") flow controller products,

including, without limitation, testing results, defect rates, accuracy, speed, and other

improvements related to the specific PTI technology included in such products (the

"Confidential Information").  Upon information and belief, Celerity designated all the

Confidential Information in accordance with section 1.C.(1) and 1.C.(2) of the NDA.  Upon

information and belief, the Confidential Information was not in the public domain.

30.     Despite this probe into Celerity's technology and business, MKS did not

acquire Celerity.  Instead, on December 15, 2005, MKS filed U.S. Patent Application No.

11/304,456 ("the '456 application").

31.     The '456 application claimed priority to nine applications all of which were

filed on June 24, 2002.  The claims of the '456 application, however, differed from the claims

of these other applications.  Specifically, despite the limited disclosure of the '456

application, upon information and belief, MKS, in the '456 application, attempted to remove

any claim limitation that required a specific location for the pressure sensor of a PTI flow controller.

32.     MKS filed the '456 application shortly after receiving Celerity's Confidential Information.  The filing of the '456 application was, therefore, upon information and belief, an attempt by MKS to cover Celerity's PTI flow controller products, which MKS knew would not be covered by the claims of any patents issuing from the prior patent applications because such PTI flow controller products did not include a pressure sensor in the location required by the claims of those other applications.  MKS, upon information and belief, after having been unable to compete with Celerity's products in the marketplace for some time, improperly utilized Celerity's Confidential Information to motivate its filing of the '456 application in attempt to unfairly compete with Celerity and, ultimately, with Plaintiffs as set forth below.

33.     On September 9, 2008, the '456 application issued as United States Patent No. 7,424,346 ("the '346 patent").  The '346 patent is one of the patents giving rise to the immediate, continuing and justiciable controversy that forms the basis for the Declaratory Judgment counts asserted below.

34.     On or about June 15, 2009, Plaintiff BI Products acquired certain assets of Celerity ("the instrumentation business"), including Celerity's Confidential Information and Celerity's rights under the NDA.

35.     Shortly thereafter, BI Products and Brooks, a company held by the same parent as BI Products, both began offering for sale, selling, using, and manufacturing the former Celerity products in the United States.  Brooks also offers for sale, sells, uses and manufactures other flow controllers that were not former Celerity products.

36.     Both BI Products and, upon information and belief, BI Products' predecessor-in-interest to the NDA, Celerity, fully performed and complied with their obligations under the NDA.

## COUNT III:  BREACH OF CONTRACT

37.     Plaintiffs incorporate and reallege the allegations of paragraphs 1 through 36 as if set fully forth herein.

38.      Upon information and belief, MKS's use of Celerity's Confidential Information for its own competitive benefit as part of its decision to file the '456 application breached its obligations to Celerity (and to BI Products as Celerity's successor) under the NDA, including, at least, MKS's obligation "not to use the Confidential Information of Discloser [Celerity] for any purpose other than to transact business with Discloser [Celerity]."

39.     As a proximate result of MKS's breach, BI Products has been damaged and seeks an award of damages in an amount to be determined by a jury at trial.  Moreover, as described below in connection with Plaintiffs' Declaratory Judgment Complaint, BI Products has been, and is being, threatened with litigation concerning the '346 patent.  This continuing threat is causing BI Products irreparable harm including, among other things, devaluing the business of BI Products.  BI Products therefore seeks an injunction preventing MKS from enforcing any and all patents issuing from the '456 application (including the '346 patent), and patents issuing from any applications claiming priority from the '456 application, due to MKS's unclean hands.

## COUNT IV:  BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

40.     Plaintiffs incorporate and reallege the allegations of paragraphs 1 through 39 as if set fully forth herein.

41.     Like all contracts under Massachusetts law, the NDA contained an implied covenant of good faith and fair dealing.  That covenant required MKS to refrain from any act that would have the effect of destroying or injuring the right of Celerity and BI Products as Celerity's successor to receive the fruits of the contract with MKS.

42.     Despite the NDA's clear and unambiguous terms, MKS breached the covenant of good faith and fair dealing implied in the NDA through its breaches of the NDA, MKS's misappropriation of Confidential Information, and MKS's other actions as described in this Complaint.

43.     MKS's actions had the effect of destroying and/or injuring BI Products's right to benefit from the protections afforded by the NDA, including (but not limited to) the right to restrict MKS's ability to use the Confidential Information.

44.     As a proximate result of MKS's actions, BI Products has been damaged and seeks an award of damages in an amount to be determined by a jury at trial.  As described above, BI Products also seeks an injunction preventing MKS from enforcing any and all patents issuing from the '456 application (including the '346 patent), and patents issuing from any applications claiming priority form the '456 application, due to MKS's unclean hands.

## COUNT V:  VIOLATION OF M.G.L. CH. 93 § 42

45.     Plaintiffs incorporate and reallege the allegations of paragraphs 1 through 44 as if set fully forth herein.

46.     Since BI Products acquired the rights in the Confidential Information and the NDA from Celerity on or about June 15, 2009, BI Products has been the exclusive owner of the Confidential Information.  Before it was disclosed to MKS, the Confidential Information

was in continuous use by Celerity and the Confidential Information is still used by BI

Products.

47.     The Confidential Information disclosed to MKS under the NDA qualifies as

trade secrets under M.G.L. c. 266, section 30 ("anything tangible or intangible or

electronically kept or stored, which constitutes, represents, evidences or records a secret

scientific, technical, merchandising, production or management information, design, process,

procedure, formula, invention or improvement.")  The Confidential Information is of

substantial economic value and not generally known to other persons who can obtain

economic value from its disclosure.  Celerity and BI Products have taken reasonable efforts to

maintain the secrecy or confidentiality of the Confidential Information.  For example,

Celerity only disclosed the Confidential Information to MKS pursuant to the NDA.

48.     Celerity disclosed the Confidential Information to MKS with the expectation

that MKS would keep the Confidential Information confidential and not use the Confidential

Information for any purpose other than to transact business with Celerity.  MKS agreed and

led Celerity to believe that MKS would not use the Confidential Information for any purpose

other than to transact business with Celerity.  Celerity and BI Products did not consent to

MKS's use of the Confidential Information except to transact business with Celerity.

49.     Upon information and belief, by using the Confidential Information in

preparing its '456 patent application which issued as the '346 patent on September 9, 2008,

MKS embezzled, stole, or unlawfully took, carried away, concealed, or copied, or by fraud or

by deception, obtained from Celerity (and BI Products as Celerity's successor) with intent to

convert to MKS's own use, the Confidential Information.  Upon information and belief, by

using the Confidential Information in preparing its '456 patent application which issued as

the '346 patent on September 9, 2008, MKS willfully and wrongfully misappropriated and used the Confidential Information to MKS's economic benefit and in violation of the NDA and the confidential relationship between the parties.

50.     As a consequence of MKS's wrongful conduct, BI Products has been damaged in an amount to be determined at trial and such damages should be doubled under M.G.L. ch. 93, section 42.  In addition, MKS has been unjustly enriched and BI Products is entitled to disgorgement of MKS's ill gotten gains and profits.

51.     Due to the willful and malicious nature of MKS's trade secret misappropriation, BI Products is entitled to exemplary damages.

52.     BI Products is entitled to preliminary and permanent injunctive relief pursuant to M.G.L. c. 93, section 42A, to royalty payments, and to any other damages allowable under applicable law.

### COUNT VI:  COMMON LAW MISAPPROPRIATION OF TRADE SECRETS

53.      Plaintiffs incorporate and reallege the allegations of paragraphs 1 through 52 as if set fully forth herein.

54.     The Confidential Information was and is used in Celerity and BI Products' business and gave and gives Celerity and BI Products an opportunity to obtain an advantage over competitors who do not know or use the Confidential Information.

55.     As a consequence of MKS's conduct as alleged above, BI Products has suffered damages in an amount to be determined at trial. Due to the willful and malicious nature of MKS's trade secret misappropriation, BI Products is entitled to exemplary damages.

### COUNT VII:  VIOLATION OF M.G.L. CH. 93A, § 11

56.     Plaintiffs incorporate and reallege the allegations of paragraphs 1 through 55 as if set fully forth herein.

57.     Plaintiffs and MKS engage in the conduct of trade or commerce.

58.     MKS's conduct described above, including but not limited to its inducing Celerity to disclose to MKS the Confidential Information by leading Celerity to believe that it would not use the Confidential Information for any purpose other than to transact business with Celerity, and then impermissibly using the Confidential Information to obtain patent rights attempting to cover Celerity's products and technology ("MKS's Unfair Competition Conduct"), constitutes the use or employment of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by M.G.L. ch. 93A § 2.

59.     MKS's Unfair Competition Conduct was knowingly and willfully wrongful and detrimental to Celerity's and Plaintiffs' business and undertaken to advance MKS's business and financial gain at the expense of Celerity and Plaintiffs.

60.     MKS's Unfair Competition Conduct occurred primarily and substantially in Massachusetts.

61.     As a result of MKS's Unfair Competition Conduct, Plaintiffs have suffered the loss of money or property.

62.     Plaintiffs are entitled to damages in an amount to be proven at trial, injunctive relief, reasonable attorneys' fees and costs pursuant to M.G.L. ch. 93A, section 11.  Because MKS's conduct was knowing and willful, Plaintiffs are entitled to an award of enhanced damages (including double or treble damages).

**COUNT VIII:  COMMON LAW UNFAIR COMPETITION**

63.     Plaintiffs incorporate and reallege the allegations of paragraphs 1 through 62 as if set fully forth herein.

64.     MKS's Unfair Competition Conduct resulted in MKS misappropriating the skills, technology, know-how, expenditures, labors, property rights of commercial value, and commercial or business advantage(s) of Celerity and Plaintiffs.

65.     MKS's Unfair Competition Conduct was intentional, in bad faith, and harmful to fair competition in the marketplace.  MKS's Unfair Competition Conduct constituted competition that was legally and morally unfair and calculated to generate substantial profit for MKS at Celerity and Plaintiffs' direct expense.

66.     By virtue of all the foregoing, Plaintiffs have been damaged in an amount to be proven at trial and Plaintiffs claim compensatory damages, punitive damages, and injunctive relief.

## DECLARATORY JUDGMENT COMPLAINT

### THE PARTIES

67.     Brooks Instrument, LLC ("Brooks") is a Delaware limited liability company with its principal place of business at 407 W. Vine Street, Hatfield, PA 19440-3000.

68.     BI Products, LLC ("BI Products") is a Delaware limited liability company with its principal place of business at 407 W. Vine Street, Hatfield, PA 19440-3000.

69.     On information and belief, Defendant MKS Instruments, Inc. ("MKS" or "Defendant") is a Massachusetts corporation having its principal place of business at 2 Tech Drive, Andover, Massachusetts 01810.

## NATURE OF THE ACTION

70.     This is an action by Plaintiffs for declaratory relief under 28 U.S.C. §§ 2201 *et seq.*

## JURISDICTION AND VENUE

71.     This action arises under the patent laws of the United States, Title 35, United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*  Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338.

72.     In addition to breaching its NDA with Celerity, MKS sued Celerity on September 8, 2008 ("the Celerity Litigation") alleging infringement of United States Letters Patent Nos. 6,712,084, entitled "Apparatus and Method for Pressure Fluctuation Insensitive Mass Flow Control";  6,932,098, entitled "Apparatus and Method for Pressure Fluctuation Insensitive Mass Flow Control";  and the aforementioned 7,424,346, entitled "Apparatus and Method for Pressure Fluctuation Insensitive Mass Flow Control" (collectively "the MKS Patents").  In the Celerity Litigation, MKS alleged that Celerity infringed the MKS Patents by "manufacturing, using, selling, offering for sale and/or importing," among other things, various flow controller products.  Upon information and belief, MKS dismissed the Celerity Litigation without prejudice on March 11, 2009.  A copy of the Court's Docket from the Celerity Litigation is attached as Exhibit D and incorporated by reference.

73.     Upon information and belief, MKS is the legal owner by assignment of all rights granted by the MKS Patents.  True and correct copies of the MKS Patents are attached as Exhibits E, F, and G, respectively, and incorporated by reference.

74.     BI Products acquired "the instrumentation business" of Celerity on or about June 15, 2009 and, as set forth previously, BI Products and Brooks began to sell the former Celerity products in the United States.

75.     On June 19, 2009, after BI Products had acquired the instrumentation business of Celerity, Ms. Kathleen Burke, the General Counsel of MKS, sent a letter to Brooks alleging that certain Celerity products, including flow controller products, infringed the MKS Patents.  The letter states that "while MKS dismissed the case [the Celerity Litigation] without prejudice … MKS has always asserted, and continues to assert, that [Celerity's products] infringe the [MKS Patents]."  The letter concluded that "MKS … will take all necessary steps to protect [its intellectual property] rights."  While the letter was addressed to Brooks, BI Products also sells the products that MKS names as allegedly infringing in Ms. Burke's letter, a copy of which is attached as Exhibit H and incorporated by reference. MKS has at all times maintained its position that the former Celerity products sold by Brooks and BI Products infringe the MKS Patents.

76.     Based upon, among other things, MKS's June 19, 2009 letter, MKS's continued conduct and repeated claims that Brooks' products, as well as the former Celerity products sold by both Brooks and BI Products, infringe the MKS Patents, and MKS's past willingness to litigate the MKS Patents, an actual and continuing justiciable controversy has arisen and currently exists under 28 U.S.C. § 1338 between Plaintiffs and MKS as to whether Plaintiffs are infringing the MKS Patents, as to the validity of the MKS Patents, and as to the enforceability of the '346 patent.  Plaintiffs, therefore, have reasonable apprehension that MKS will file suit against it for infringement of the MKS Patents.

77.     Personal jurisdiction exists over MKS generally because MKS maintains its headquarters and principal place of business within this judicial district.  Accordingly, MKS is doing business in this judicial district and has sufficient contacts with this state and judicial district to subject it to personal jurisdiction in this district.

78.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## COUNT IX:  A DECLARATION OF NON-INFRINGEMENT

79.     Plaintiffs incorporate and reallege the allegations of paragraphs 25 through 78 as if set fully forth herein.

80.      There is an actual, justiciable controversy between Plaintiffs, on the one hand, and MKS, on the other, as to the infringement of the MKS Patents.

81.     Plaintiffs request the declaration of this Court that they and their products, which include, without limitation, the IFC-125 integrated flow controller and the GF-125 integrated flow controller as well as the Unit 25 Series performance gas flow controllers, Unit 125 Series integrated flow controllers, RFC 100 ratio flow controllers, IN3XP Series performance mass flow controllers and meters, and custom gas delivery modules using PTI technology sold by Brooks and BI Products have not and do not infringe, either literally, under the doctrine of equivalents, or indirectly, any valid claim of the MKS Patents, and that they are not liable for damages arising from MKS's claimed infringement.

## COUNT X:  A DECLARATION OF INVALIDITY

82.     Plaintiffs incorporate and reallege the allegations of paragraphs 67 through 81 as if set fully forth herein.

83.     There is an actual, justiciable controversy between Plaintiffs, on the one hand, and MKS, on the other, as to the validity of the MKS Patents.

84.     Plaintiffs request the declaration of this Court that one or more claims of each of the MKS Patents are invalid for failure to meet the requirements of patentability under at least 35 U.S.C. §§ 101, 102, 103, 112 and/or 120.

## COUNT XI:  A DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 7,424,346

85.     Plaintiffs incorporate and reallege the allegations of paragraphs 25 through 84 as if set fully forth herein.

86.     There is an actual, justiciable controversy between Plaintiffs, on the one hand, and MKS, on the other, as to the enforceability of the '346 patent.

87.     The '456 application was filed on December 15, 2005 and claims priority to nine patent applications all of which were filed on June 24, 2002.  The '456 application issued as the '346 patent.  As stated previously, the '456 application was filed, upon information and belief, as a direct result of MKS's misappropriation of Celerity's Confidential Information in violation of the NDA.  The '346 patent, therefore, should be declared unenforceable for at least that reason alone.

88.     The prosecution of the '456 application leading to the '346 patent was done by Toby H. Kusmer.  The '346 patent is entitled "Apparatus and Method for Pressure Fluctuation Insensitive Mass Flow Control."  Mr. Kusmer also prosecuted U.S. Patent No. 5,868,159 (the "'159 patent"), entitled "Pressure-Based Mass Flow Controller."  The application leading to the '159 patent was filed on July 12, 1996.  The '159 patent issued on February 9, 1999, and was, upon information and belief, also assigned to MKS Instruments, Inc.  The '159 patent predates the earliest possible priority date of the '346 patent.  A true and correct copy of the '159 patent is attached as Exhibit I and incorporated by reference.

89.     The '159 patent is material to the patentability of the '346 patent.  Both the '159 patent and the '346 patent disclose mass flow controllers that monitor and control the pressure of mass flow, and both patents similarly claim mass flow controllers that sense pressure and generate control signals based on the detected pressure.  The '159 patent is, in

fact, so material to the '346 patent that the '159 patent anticipates or renders obvious at least claim 1 of the '346 patent.

90.     Upon information and belief, MKS and its agents, including Mr. Kusmer, were aware of the '159 patent at the time the '346 patent was filed and throughout the '346 patent's prosecution.  Both patents were prosecuted by Mr. Kusmer, and, during the entire prosecution of the '346 patent, MKS, upon information and belief, owned the rights of the '159 patent. However, none of the Information Disclosure Statements made during the prosecution of the '346 patent or any of its parent applications disclosed the '159 patent.

91.     Upon information and belief, neither MKS, nor its agents, including Mr. Kusmer, despite their awareness of the '159 patent and their knowledge of its high degree of materiality to the then pending applications that led to the '346 patent, disclosed the '159 patent to the Patent Examiner at any point during the prosecution of the '346 patent.

92.     Upon information and belief, MKS, its agents, and in particular Mr. Kusmer, withheld the disclosure of the '159 patent with intent to deceive the Patent and Trademark Office into improperly issuing the '346 patent.

93.     Upon information and belief, the Patent Examiner was not aware of the '159 patent, and did not consider the '159 patent in making the decision to issue the '346 patent.

94.     MKS's, its agents', and Mr. Kusmer's purposeful nondisclosure of the '159 patent during the prosecution of the '346 patent constitutes inequitable conduct and renders the '346 patent unenforceable.

95.     As set forth previously, the '456 application, which led to the '346 patent, claims priority from nine applications that were filed on June 24, 2002.  Prior to that date, however, Applied Materials, Inc. ("Applied Materials") provided MKS documentation

disclosing the inventions claimed in the '346 patent.  Specifically, on information and belief,

Applied Materials provided MKS electronic mail correspondence on April 20, 2001, a

PowerPoint presentation dated April 18, 2001, and a specification dated November 16, 2001,

("the Applied Materials documents").  In connection with supplying the Applied Materials

documents, upon information and belief, Applied Materials requested that various suppliers,

including MKS, provide proposals to supply pressure insensitive mass flow controllers that fit

the specifications described in the Applied Materials documents.

96.     The Applied Materials documents describe a pressure insensitive mass flow

controller that Applied Materials had conceived.  The Applied Materials documents predate

the earliest possible priority date of the '346 patent.  Upon information and belief, the Applied

Materials documents disclose each and every limitation of one or more claims of the '346

patent.

97.     Upon information and belief, MKS and its agents had knowledge of the

Applied Materials documents and Applied Materials' role in conception of the '346 patent

during the pendency of the application that led to the '346 patent, but did not disclose these

documents and facts to the Patent Examiner with the intent to deceive the U.S. Patent and

Trademark Office into improperly issuing the '346 patent.

98.     None of the Information Disclosure Statements made during the pendency of

the application that led to the '346 patent contained the Applied Materials documents.  Upon

information and belief, the Patent Examiner was not aware of the Applied Materials

documents, nor the role of Applied Materials in the conception of the '346 patent, at any time

when deciding to issue the '346 patent.

99.     Upon information and belief, the Applied Materials documents and Applied Materials' conception of the '346 patent are material to patentability because they reveal the true inventorship and furthermore anticipate and/or render obvious the '346 patent.

100.    Upon information and belief, the Applied Materials documents and Applied Materials' conception of the '346 patent are material to patentability because they refute MKS's and its agents' assertions that the invention was conceived only by non-Applied Materials personnel: Ali Shajii, Nicholas Kottenstette, and Jesse Ambrosina.

101.    Upon information and belief, the Patent Examiner did not consider the Applied Materials documents, nor Applied Materials' role in conception, at any time when deciding to issue the '346 patent.

102.    Upon information and belief, the Patent Examiner would not have issued the '346 patent if the Patent Examiner had been made aware of the Applied Materials documents or Applied Materials' role in the conception of the '346 patent.

103.    MKS and its agents' purposeful nondisclosure of the Applied Materials documents and Applied Materials' role in the conception of the '346 patent constitutes inequitable conduct, making the '346 patent unenforceable.

## DEMAND FOR JURY TRIAL

104.    Plaintiffs respectfully demand a jury trial of all issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to grant it the following relief:

(a)     A judgment in favor of Plaintiffs that Defendant has infringed, directly, and/or indirectly, by way of inducing and/or contributing to the infringement of, one or more claims of the '392 patent;

(b)     A judgment in favor of the Plaintiffs that Defendant has infringed, directly, and/or indirectly, by way of inducing and/or contributing to the infringement of, one or more claims of the '477 patent;

(c)     A judgment that such infringement was willful;

(d)     A preliminary and permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement, inducing the infringement of, or contributing to the infringement of, one or more of the claims of the '392 and/or '477 patents;

(e)     A judgment and order requiring Defendant to pay Plaintiffs their damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of one or more claims of the '392 and/or '477 patents;

(f)     An award to Plaintiffs for enhanced damages resulting from the knowing, deliberate and willful nature of Defendant's infringement;

(g)      An award to Plaintiffs of their actual damages in an amount to be determined at trial;

(h)     A preliminary and permanent injunction preventing MKS from enforcing any and all patents issuing from the '456 application (including the '346 patent), and patents issuing from any applications claiming priority from the '456 application;.

(i)     An award to BI Products of double damages, pursuant to M.G.L. ch. 93, section 42;

(j)     Disgorgement of all of MKS's ill gotten gains and profits;

(k)     An award to Plaintiffs of punitive or exemplary damages;

(l)     An award to BI Products of  preliminary and permanent injunctive relief pursuant to M.G.L. c. 93, section 42A, of royalty payments, and of any other damages allowable under applicable law;

(m)     An award to Plaintiffs of their reasonable attorneys fees and costs incurred in this action, pursuant to M.G.L. ch. 93A, § 11;

(n)     An award to Plaintiffs of double or treble damages, pursuant to M.G.L. c. 93A, § 11.

(o)     That the Court enter a judgment declaring that Plaintiffs do not infringe, contribute to the infringement by others of, or induce the infringement of, any valid claim of each of the MKS Patents, either literally or under the doctrine of equivalents;

(p)     That the Court enter a judgment declaring each of the claims of each of the MKS Patents invalid;

(q)     That the Court enter a judgment declaring the '346 patent unenforceable;

(r)     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiffs their reasonable attorneys' fees;

(s)     That the Court award Plaintiffs pre-judgment interest and the costs incurred in this action; and

(t)     Any and all such other relief that this Court deems just and proper.

Dated: June 11, 2010                              Respectfully submitted,


                                                  _/s/ Karen C. Marchiano_____
                                                  Karen C. Marchiano
                                                  Mass. Board of Bar Overseers No. 668844
                                                  Sonnenschein Nath & Rosenthal LLP
                                                  525 Market Street, 26th Floor
                                                  San Francisco, CA  94105-2708
                                                  Telephone: (415) 882-5047
                                                  Facsimile: (415) 882-0300
                                                  Email: kmarchiano@sonnenschein.com

                                                  Mark C. Nelson  (Lead Attorney)
                                                  Texas State Bar No. 00793361
                                                  Darren W. Collins
                                                  Texas State Bar No. 2400190
                                                  Matthew D. Orwig
                                                  Texas State Bar No. 15325300
                                                  Sonnenschein Nath & Rosenthal LLP
                                                  2000 McKinney Ave, Suite 1900
                                                  Dallas, Texas  75201
                                                  Telephone:  (214) 259-0901
                                                  Facsimile:   (214) 259-0910
                                                  Email: mcnelson@sonnenschein.com
                                                  Email: dcollins@sonnenschein.com
                                                  Email: morwig@sonnenschein.com

                                                  Philip A. O'Connell, Jr.
                                                  Mass. Board of Bar Overseers No. 649343
                                                  Sonnenschein Nath & Rosenthal LLP
                                                  101 Federal Street, Suite 2750
                                                  Boston, MA  02110-1873
                                                  Telephone:  (617) 235-6802
                                                  Facsimile: (617) 235-6899
                                                  Email:  poconnelljr@sonnenschein.com

                                                  Jimmy Shin
                                                  California State Bar No. 200161
                                                  Sonnenschein Nath & Rosenthal LLP
                                                  1530 Page Mill Road, Suite 200
                                                  Palo Alto, CA 94304-1125
                                                  Telephone: (650) 798-0300
                                                  Facsimile: (650) 798-0310

**Attorneys For Plaintiffs and Declaratory Judgment Plaintiffs BROOKS INSTRUMENT, LLC and BI PRODUCTS, LLC**

## **Certificate of Service**

I hereby certify that a true copy of the above document was served upon the attorney of record for MKS Instruments, Inc. by ECF on June 11, 2010. .


   /s/ Karen C. Marchiano
Karen C. Marchiano


14862102 v 1